IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

SHEILA MCCONN,                         )
                                       )
                                       )          2:21-CV-01177-MJH
           Plaintiff,                  )
                                       )
     vs.                               )
                                       )
DOLLAR GENERAL CORPORATION,            )
                                       )

           Defendant,

OPINION AND ORDER

Plaintiff, Sheila McConn, brought the within action against Defendant, Dollar General
Corporation, for negligence when one of its shelving displays allegedly caused injury to Ms.
McConn.  (ECF No. 1-2).   Dollar General now moves, under *Daubert*, to preclude opinion
testimony of Ms. McConn's purported retail safety expert, Robert Loderstedt.   (ECF No. 22).

After consideration of Dollar General's *Dabuert* Motion to Preclude Opinion Testimony
of Plaintiff's Expert, Robert Loderstedt (ECF No. 22), the respective briefs (ECF Nos. 22 and
30), and for the following reasons, Dollar General's *Daubert* Motion will be granted.

    I.     Background

        A.  Factual Background

On March 27, 2020, Ms. McConn allegedly suffered injuries as a result of "books falling
on her" at Dollar General's retail store in Fredricktown, PA.   (ECF No. 34 at ¶ 1).   The alleged
March 27th incident occurred at approximately 10:12 a.m. when Ms. McConn attempted to
remove a book, titled *Duct Tape Mania*, "from the center of a book case in Dollar General."  *Id*.
at ¶ 2.  After Ms. McConn obtained said book, "books began falling on her" and "a rack that

holds the books in place that became dislodged." *Id*. at ¶ 3.  Ms. McConn testified that *Duct Tape Mania* was resting on a shelf at her eye level from her height of 5' 1 ½". *Id*. at ¶¶ 5-6.   The shelf was horizontal with two vertical racks or pieces on either end. *Id*. at ¶ 7.  Ms. McConn testified that the shelf was "jammed" with books.  *Id*. at ¶ 8.   In order to dislodge *Duct Tape Mania,* Ms. McConn testified she gave a swift tug to the book, and when she pulled the book out, it released other books that fell onto her and the vertical rack at the end of the shelf became dislodged. *Id*. at ¶ 10.

B.  Mr. Loderstedt's Opinions

In support of her claims, Ms. McConn has filed an Expert Disclosure which identifies Robert Loderstedt as a liability expert and includes a copy of his April 25, 2022, Report. (ECF 18 at pp. 36- 54.) Mr. Loderstedt opines in his Report that Dollar General "deviated from accepted industry wide customs and safety practices in the retail industry." *Id*. at p. 48.

In its *Daubert* Motion, Dollar General contends that Robert Loderstedt is not qualified to testify as an expert in retail safety, and that Mr. Loderstedt's opinions are inadmissible because they are not reliable and do not fit with the facts of this case.

II.     Standard of Review

Under Federal Rule of Evidence 702, the District Court is to act as a gatekeeper to, "ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010). Federal Rule of Evidence 702 provides in part that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: … (b) the testimony is based on sufficient facts or data; [and] (c)the testimony is the product of reliable principles and methods; …." *Id*.

The Supreme Court in *Daubert v. Merrell Dow Phamaceuticals*, 509 U.S. 579 (1993) changed the criteria for the admissibility of expert testimony and charged trial courts to act as "gate-keepers" to ensure that the proffered testimony is both relevant and reliable. *Id*. at 592-93. In *Daubert*, the Supreme Court articulated the following two-prong test for determining the admissibility of expert testimony:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id*. at 593-94. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id*. at 595. The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions" that expert testimony must meet for admissibility: qualification, reliability and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The Third Circuit has explained:

> Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

*Id*. at 404. When expert testimony is challenged under Daubert, "the proponents of the expert must establish admissibility by a preponderance of the evidence." *Bruno v. Bozzuto's*, Inc., 311 F.R.D. 124, 135 (M.D. Pa. 2015).

III.    Discussion

A.  Qualifications

Dollar General maintains that Mr. Loderstedt is unqualified to testify as an expert in retail safety because he is not an engineer, has no degree in retail safety, and has no practical work

experience, i.e. retail store management or retail risk management,  which would qualify him to serve as a retail safety expert.

In response, Ms. McConn argues that Mr. Loderstetdt has a Master's Degree in Advanced Management, a certificate in safety management and a certificate in OSHA Outreach Training. Ms. McConn further maintains that she is unaware of a specific degree an individual can obtain in "retail safety." She further contends Mr. Loderstedt's relevant work experience includes the following from his curriculum vitae:

      a.  Vice President of Sales, Marketing, and Quality Assurance- The Raymond Corporation- focused on product training and development, field service training, and field safety training to Raymond, customers, including Wal-Mart and Home Depot. I have visited over 100+ warehouse, distribution and manufacturing companies to conduct on-site reviews of safety, productivity and efficiency.

      b.  President and CEO, Raymond Handling Technologies, Inc.-

      c.  Part-time Stock Clerk at Garwood New Jersey Shoprite

      d.   Zazu Gifts- Part time employee at retail gift shop, assist in remerchandising efforts, conduct safety training of new and existing employees and safety audits while at the facility. Wrote Employee Safety Program & Safety Policies for Zazu Gifts.

(ECF No. 18 at pp. 49-50).

Further, Ms. McConn argues that Mr. Loderstedt testified that he has conducted field research for falling merchandise involving produce cases and falling glass bottles due to incorrect stacking. (ECF No. 29 at p. 88).   She further asserts that Mr. Loderstedt has been qualified to testify as a retail safety expert in numerous states including Pennsylvania, New Jersey, Delaware, Indiana, Illinois, Connecticut and New York. *Id*.

"An expert witness must have such skill, knowledge, or experience in the field as to make it appear that his opinion will probably aid the trier of fact in his search for the truth." *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987) (finding that proffered expert, a

salesman, was not qualified because he had no knowledge, experience, or training in matters regarding engineering). In *Yazujian v. PetSmart*, 729 F. App'x. 213 (3d Cir. April 17, 2018), a retail premises liability action where retail safety was also at issue, the Third Circuit affirmed the district court's conclusion that, under *Daubert*, Mr. Loderstedt, the same proferred expert in this case, was not qualified to testify as an expert in retail safety.   In affirming the district court, the Third Circuit stated:

> After careful review of the record, we conclude that the District Court did not abuse its discretion in declining to permit Loderstedt to testify as an expert witness in retail safety. Loderstedt had no academic background in retail safety, no formal training in retail management or safety, and no retail work experience other than a job as a stock clerk more than 50 years prior. Instead, he claimed that his specialized knowledge and expertise were based on his review of over one hundred retail store manuals, and his time training under William Julio—a person who he claimed was an expert in retail safety—which included visits to retail stores where he would walk in and look around.

*Yazujian*, 729 F. App'x. at 215–16.

Here, upon a careful review of Mr. Loderstedt's curriculum vitae, expert report, and deposition testimony as well as the Third Circuit's analysis in *Yazujian*, this Court agrees that Mr. Loderstedt does not possess the requisite skill, knowledge, or experience to testify in the area of retail safety that is pertinent to this case.  While Mr. Loderstedt certainly appears to possess skills, knowledge, and experience in some aspects of safety, the breadth of his skills, knowledge, and experience do not satisfy this Court's *Daubert* inquiry.  The Court must be wary of experts who begin to hold themselves out as "jacks of all trades" and cast a net wider in scope that what is contained in their curriculum vitae and qualification testimony.  Therefore, under the sound reasoning of *Yazujian*, this Court finds that Mr. Loderstedt does not presently qualify as an expert in retail safety for the purposes of this case.

B.  Reliability and Fit

Even if the Court had found Mr. Loderstedt qualified, Dollar General argues that Mr. Loderstedt's opinions are inadmissible because they are not reliable and do not fit with the facts of this case.  Specifically, Dollar General maintains that Mr. Loderstedt's opines that Dollar General was negligent because it displayed the books, which fell on Ms. McConn, at a height above six-feet.  Dollar General contends that this belies the evidence, as Ms. McConn, who is 5' 1 ½", testified that the books were at her eye level.  Dollar General also asserts that Mr. Loderstedt identified no industry standard regarding safe stocking of books in a retail store, despite opining that Dollar General violated a laundry list of so-called "accepted standards." Finally, Dollar General argues that Mr. Lodertedt admitted that he could not opine that Dollar General violated any of its own stocking policies.

In response, Ms. McConn argues that, while Dollar General maintains that the books were at eye level, she also testified books were located on the top shelf. Therefore, she contends that a dispute over the interpretation of certain facts or facts known or unknown to an expert do not render the expert's testimony inadmissible; but, rather, goes to the weight of the evidence. Ms. McConn further maintains that Mr. Loderstedt is testifying to the customs of the retail industry because no stocking standards or laws exist in the retail industry.  Finally, Ms. McConn argues that Mr. Loderstedt opined that Dollar General failed to follow its own standard operating procedures in documenting the incident.

A District Court should exclude expert testimony which lacks "both the reliability and fit required under Rule 702." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833 (3d Cir. 2020) (holding that District Court abused its discretion when it failed to exclude an expert's opinion where his "testimony lacked both the reliability and fit required

under Rule 702"). To determine whether an expert's testimony "fits" the proceedings, this Court asks whether it "will help the trier of fact to understand the evidence or to determine a fact in issue." *Id*. at 835. The Third Circuit has held that an expert should not be permitted to testify about his theory where "it does not fit the facts." *Id*.

Here, a careful review of Mr. Loderstedt's purported opinion demonstrates that he has not identified any industry standard regarding the safe stocking of books in a retail store and that he is unaware of any such standard. (ECF No. 22-3 at p. 66). Mr. Loderstedt also testified that the standards referenced in his report are not industry standards and not contained in Dollar General's procedures. *Id*. at pp. 57, 69, 71, 72, 73, and 75. Further, Mr. Loderstedt testifies that: "Dollar General, deviated from accepted industry wide safety practices … which include … [l]imitation on the height of product displays, including to six (6) feet or less so as to not create an unnecessary danger to customers …." (ECF No. 22-2 at p. 11). Mr. Loderstedt, however, admits that the books at issue were not displayed above six feet let or above Ms. McConn's eye level, which would have been lower than 5' 1½" in height. (ECF No. 22-2 at p. 62). He also admitted that he could not testify that Dollar General violated any of its own stocking policies. *Id*. at ¶ 53. Ms. McConn's arguments are likewise unavailing and engage in a circular argument that Mr. Loderstedt's experience should carry the day, notwithstanding the absence or any independent indicia of fit and reliability. At best, Mr. Loderstedt can demonstrate that Dollar General failed to document the incident. Unfortunately for Ms. McConn, that failure followed the incident and bears no relevance as to whether Dollar General was negligent in causing the condition and Ms. McConn's injuries.

In sum, Mr. Loderstedt, to the extent he attempts to cite to an industry standard, he theorizes that Dollar General is liable because it displayed the books above six-feet; however,

such theory ignores the record evidence that Ms. McConn, at 5' 1½" tall, testified that the books at issue were at her eye level. Because Mr. Loderstedt's testimony and opinions are not based upon the facts of record, his testimony will not assist the trier of fact. Therefore, Mr. Loderstedt's testimony is inadmissible under *Daubert*.

Accordingly, *Dabuert* Motion to Preclude Opinion Testimony of Plaintiff's Expert, Robert Loderstedt will be granted.

ORDER

And Now this 19th dayof December 2022, Dollar General's *Dabuert* Motion to Preclude Opinion Testimony of Plaintiff's Expert, Robert Loderstedt (ECF No. 22), the respective briefs (ECF Nos. 22 and 30), and for the foregoing reasons, Dollar General's *Daubert* Motion is granted.

BY THE COURT:

MARILYN J. HORAN
United States District Judge